IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT SHARP,

                          Plaintiff,                    OPINION AND ORDER

          v.                                            18-cv-195-wmc

JOHN NUMSEN, T. ROBERTS,
LOUIS WILLIAMS, II, SARA REVELL,
and IAN CONNORS,

                          Defendants.

*Pro se* plaintiff Robert Sharp is proceeding under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1974), claiming that a prison mailroom supervisor interfered with his legal mail while a federal prisoner at the Federal Correctional Institution in Oxford, Wisconsin, in violation of the First Amendment, and that four, other defendants did as well by declining to intervene. Defendants have since filed a motion to dismiss, which asserts a combination of defenses under Federal Rule of Civil Procedure 12(b). Specifically, the out-of-state Bureau of Prisons ("BOP") defendants, Revell and Connors, seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction as a threshold matter, while *all* defendants seek dismissal of plaintiff's complaint for failure to state a claim under Rule 12(b)(6). (Dkt. #25.) The court agrees and will dismiss (1) without prejudice the claims against the BOP defendants for lack of personal jurisdiction and (2) with prejudice the claims against the Oxford defendants, Numsen, Roberts and Williams, because *Bivens* does not extend to the circumstances of this case. Because all defendants will be dismissed and this case closed, the court will also deny as moot plaintiff's pending motions for a preliminary injunction (dkt. #21) and for assistance in recruiting counsel (dkt. #31).

ALLEGATIONS OF FACT[1]

## A. The Parties

Sharp is currently incarcerated at the McDowell Federal Correctional Institution located in Welch, West Virginia.  At all times relevant to this lawsuit, he was incarcerated at the Oxford Federal Correctional Institution ("FCI-Oxford").  The defendants working at FCI-Oxford are:  John Numsen, the prison mailroom supervisor; Tiffany Roberts, a legal administrative assistant for inmates complaints; and Louis Williams II, the warden.  Sharp is also proceeding against two BOP administrators:  Defendant Sara Revell was, at all times relevant to this lawsuit, the Regional Director for the North Central Region with her business office in Kansas City, Kansas (dkt. #27); and defendant Ian Connors is the National Inmate Appeals Administrator who oversees the BOP's grievance process at the national level from the BOP Central Office in Washington, D.C. (dkt. #28 at 2).

Both Revell and Connors assert that they have never resided, worked, been professionally licensed in, or owned real property in Wisconsin.  (Dkt. ##27, 28 at 2.)  Revell further maintains that she has never attended school in Wisconsin either.  (Dkt. #27.)  For his part, Connors indicates that he earned a master's degree from the University of Wisconsin-Platteville, but through an online distance education program while living in California.  (Dkt. #28 at 2.)

---

[1] In addressing any *pro se* litigant's complaint, the court must read the allegations generously.  *Haines v. Kerner*, 404 U.S. 519, 521 (1972).  Unless otherwise noted, the court assumes the following facts when viewed in a light most favorable to plaintiff and drawing all inferences in his favor.

**B.  The Processing of Sharp's Legal Mail at FCI-Oxford**

Sharp alleges that defendant Numsen improperly processed some of his legal mail at FCI-Oxford while he was still appealing his criminal conviction.  After being transferred from FCI-Oxford to Iowa to face new criminal charges in 2015, Sharp returned to FCI-Oxford in December 2016 following his conviction.  Sharp then appealed his Iowa criminal conviction, and in February 2017, he began receiving letters from his appellate counsel, as well as both state and federal courts and two state attorney disciplinary boards.  Sharp's lawyers would mark their envelopes either as "special mail" or "legal mail" intended to be opened *only* in Sharp's presence.  Although Sharp does not allege that his lawyers expressly identified themselves as lawyers on these envelopes, they at least included the name and address of the sender law firm or legal aid organization along with the lawyer's name.  Sharp's court mail from the United States Court of Appeals for the Eighth Circuit was also marked as "legal mail" to be opened in Sharp's presence, while mail from other courts and the disciplinary boards indicated the name and address of that sender institution.  (Dkt. #21-2.)

That same month, Sharp informed Oxford's prison mailroom supervisor Numsen that the first few letters sent by his appellate lawyers had been opened outside his presence by mailroom staff.  Sharp also showed Numsen the envelopes and provided Numsen with his lawyers' names, addresses and phone numbers, as well as caselaw instructing "how prisons should treat privileged legal mail from attorneys and courts."  (Dkt. #1 at 2.) However, Numsen responded that he was already following BOP policy and would continue to do so.  When Sharp subsequently informed Numsen that staff had now opened

3

*six* attorney letters in Sharp's presence that were stamped and addressed identically to those opened outside his presence, Numsen acknowledged that none of the legal letters should have been opened outside of Sharp's presence.

Sharp also turned in frustration to FCI-Oxford's legal department in March 2017, filing grievances about his opened mail.  However, mailroom assistant Roberts allegedly refused to sign off on Sharp's grievances or otherwise intervene, again stating that FCI-Oxford was following BOP policy.  Warden Williams allegedly gave the same response in July 2017, when one of Sharp's attorneys also notified him that prison staff were opening Sharp's legal mail outside his presence.  Next, in July 2017, a corrections counselor allegedly gave Sharp two opened attorney letters that the mailroom supervisor Numsen left while the counselor was out of the office.  According to Sharp, one letter "was 7 days past the post mark," the other "was 18 days past [its] post mark," and both letters contained time-sensitive affidavits that had to be returned to his attorney immediately.  (*Id.* at 3.) Sharp then sent a grievance to defendant Revell as the Regional Director for the BOP's North Central Region in September 2017, alleging that FCI-Oxford's mailroom supervisor Numsen and his staff were opening Sharp's legal mail outside his presence.  Sharp received a response back less than a month later indicating that staff was opening his mail in accordance with BOP policy.  (Dkt. #27-1.)  While Revell asserts that she had "general supervisory responsibility for facilities and inmate care at FCI Oxford," she generally "did not exercise control over the day-to-day operations" or personally sign responses to administrative remedy appeals, and specifically did not review or deny Sharp's appeal. (Dkt. #27.)  Although Revell acknowledges that her name appears in the signature block

4

of the response to Sharp's appeal, she also explains that the signature itself is that of a non-defendant, deputy regional director to whom Revell assigned her signature authority. (*Id.*) As the BOP's National Inmate Appeals Administrator, defendant Connors similarly responded in kind to the October 20, 2017, grievance he later received from Sharp.

Finally, while the Eighth Circuit affirmed his Iowa criminal conviction in February 2018, Sharp now suggests that defendant Numsen, having opened some of Sharp's legal mail while the appeal was pending, showed "an overzealous interest" in his appeal and "may have shared privileged information with the agency prosecuting" him. (Dkt. #1 at 5.)

## C.  Sharp's Complaint

Sharp filed this lawsuit in March 2018 under 42 U.S.C. § 1983, alleging that all defendants violated his First and Sixth Amendment rights. The court screened Sharp's complaint as required by 28 U.S.C. § 1915A and evaluated his claims under *Bivens* because § 1983 does not apply to federal actors. (Dkt. #15 at 1.) The court allowed Sharp to proceed only on his First Amendment claim that: (1) FCI-Oxford's mailroom supervisor Numsen repeatedly either opened his mail outside his presence or delayed the delivery of Sharp's correspondence from his attorneys; and (2) the other defendants (Roberts, Williams, Revell and Connors) each validated Numsen's unconstitutional behavior. (*Id.* at 8.) The court cautioned, however, that the United States Supreme Court had yet to declare a First Amendment claim actionable under *Bivens.* (*Id.* at 4.) In lieu of answering the complaint, defendants moved to dismiss.

OPINION

As noted, all defendants seek dismissal under Rule 12(b)(6), arguing that plaintiff's First Amendment claim is not available under *Bivens*.[2]  The two BOP defendants (Revell and Connors) also seek dismissal for lack of personal jurisdiction under Rule 12(b)(2).  The court will address each argument in turn.

## I.  Dismissal for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss under Rule 12(b)(6)," a plaintiff must allege sufficient facts to "state a claim for relief that is plausible on its face." *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015).  Moreover, a Rule 12(b)(6) motion is the proper means for dismissal when *Bivens* does not authorize a claim. *See Massey v. Helman*, 196 F.3d 727, 738 (7th Cir. 1999) ("[T]he appropriate basis for dismissing a *Bivens* claim . . . is failure to state a claim upon which relief can be granted . . . .").

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers for a constitutional violation.  *Engel v. Buchan*, 710 F.3d 698, 703 (7th Cir. 2013).  However, the Supreme Court has only allowed an implied damages remedy under *Bivens* in  three cases:  (1) a Fourth Amendment claim against FBI agents for handcuffing a man in his home without a warrant, *Bivens*, 403 U.S. 388; (2) a Fifth

---

[2] Defendants argue in the alternative that they are entitled to qualified immunity.  Because the court finds that plaintiff's claim is not cognizable under *Bivens*, it need not consider defendants' qualified immunity argument.  Even so, given questions regarding the viability of the claim, this defense would appear to preclude any claim by plaintiff to monetary relief

Amendment sex discrimination claim against a congressman for firing his female administrative assistant, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by a prisoner's estate against prison officials for failure to provide adequate medical care for his asthma, *Carlson v. Green*, 446 U.S. 14 (1980).  More recently, in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court also expressed concern about further expansion of the implied rights recognized in *Bivens*, holding that expanding *Bivens* to a new context would be a "disfavored judicial activity" and cautioning that "even a modest extension is still an extension."  *Id*. at 1857, 1864.  Accordingly, the Court established a three-step inquiry that district courts must follow before finding a *Bivens* remedy applies:  (1) whether the claim "presents a new *Bivens* context"; (2) whether there is any "alternative, existing process for protecting the interest" at stake; and (3) whether any other "special factors counsel[ ] hesitation" before authorizing a new kind of federal litigation.  *Id.* at 1856-60.  For the reasons set forth below, the court concludes that the answer to each of these questions counsels against extending a Biven-type remedy on the facts presented here.

## A.  Plaintiff's First Amendment Claim Arises in a New *Bivens* Context

"If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Abbasi*, 137 S. Ct. at 1859.  A "meaningful" difference can be found based on:

> the rank of the officers involved; the constitutional right at
> issue; the generality or specificity of the official action; the
> extent of judicial guidance as to how an officer should
> respond . . .;  the statutory or legal mandate under which the
> officer was operating; the risk of disruptive intrusion by the

> Judiciary into the functioning of other branches;   or the
> presence of potential special factors that previous *Bivens* cases
> did not consider.

*Id.* at 1860.

Given its different constitutional footing, plaintiff's First Amendment interference-with-legal mail claim is meaningfully different on its face from the Fourth Amendment unreasonable seizure claim recognized in *Bivens*, as well as the Fifth Amendment gender discrimination claim recognized in Davis and the Eighth Amendment deliberate indifference claim recognized in Carlson.  Indeed, the Supreme Court has yet to recognize a First Amendment *Bivens* claim.  *See Abbasi*, 137 S. Ct. at 1857 (noting that the Court declined to create an implied damages remedy in a First Amendment suit against a federal employer); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014) (assuming without deciding that Bivens applied to a First Amendment claim); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (the Court has "never held that Bivens extends to First Amendment claims"); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("we have declined to extend *Bivens* to a claim sounding in the First Amendment"); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to create a *Bivens* remedy for a First Amendment claim against a federal employer because "Congress is in a better position to decide" the issue).  Similarly, the Supreme Court "has refused to extend *Bivens* contexts beyond the specific clauses of the specific amendments for which a cause of action had been implied, or even to other classes of defendants facing liability under those same clauses." *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017) (comparing cases).  Numerous district courts have followed suit post-*Abbasi* with respect to mail interference claims in particular.  *E.g.*, *Wise v. Maruka*, No. 1:20-00056,

2021 WL 1603819, at *16 (S.D. W. Va. Jan. 5, 2021) (First Amendment retaliation and improper opening of mail present a new *Bivens* context); *White v. Sloop*, No. 3:17-cv-1059-JPG-DGW, 2018 WL 6977336, at *3 (S.D. Ill. Aug. 31, 2018) (concluding that plaintiff's First Amendment interference with mail claim arose in a new *Bivens* context); *Harris v. Dunbar*, No. 2:17-cv-00536-WTL-DLP, 2018 WL 3574736, at *2 (S.D. Ind. July 25, 2018) (same); *Stratmon v. Morris*, No. 1:12-cv-01837, 2018 WL 3388406, at *3 (E.D. Cal. July 10, 2018) (same).

Because the Supreme Court has not yet recognized a *Bivens* remedy for plaintiff's First Amendment claim, it follows that this is a new context, requiring an alternative-remedy and special-factors analysis. Plaintiff acknowledges as much but emphasizes that at least one pre-*Abbasi* federal court decision assumed the validity of a First Amendment claim under *Bivens*. (Dkt. #41 at 7.) However, *Abbasi* made clear that "lower courts must scrutinize attempts to expand the *Bivens* remedy, even where courts had previously assumed the availability of such a remedy." *Gonzalez*, 269 F. Supp. 3d at 58 (citing *Abbasi*, 137 S. Ct. at 1865); *see also Smadi v. True*, 783 F. App'x 633 (7th Cir. 2019) (remanding so that district court could develop full record on whether *Bivens*-style damages remedy was available for alleged violations of prisoner's First Amendment rights after *Ziglar*).

**B. Plaintiff has Alternative, Existing Processes Available to Address his Claim**

Moving to the next step in the analysis, the court must ask "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Where "there is an alternative remedial structure

present . . . that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858.

As defendants note, plaintiff had available, alternative remedial structures to address his claims, which also counsels against providing a new *Bivens* remedy.  For one, plaintiff could have sought relief under the Mandamus and Venue Act, which grants "original jurisdiction" of mandamus actions to compel federal officers "to perform a duty owed to the plaintiff."  28 U.S.C. § 1361; *see also Silva v. Ward*, No. 16-cv-185-wmc, 2019 WL 4721052, at *5 (W.D. Wis. Sept. 26, 2019) ("[I]f the conditions of Silva's cell and safety were actually so egregious as to give rise to constitutional violations in a *Bivens* claim, there would appear no reason why he could not have invoked the Mandamus and Venue Act to compel BOP officials at FCI-Oxford to address those conditions.").  Plaintiff responds that the court should have sua sponte "recharacterize[d] his original complaint as" an action brought under that Act, rather than as a *Bivens* action.  (Dkt. #41 at 8.)  But that is not an argument of unavailability, and in any event, that is not the court's responsibility in screening plaintiff's complaint.  *See* 28 U.S.C. § 1915A (court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, on specified grounds).

For another, plaintiff could (and did) seek injunctive relief while still housed at FCI-Oxford through the Bureau of Prison's Administrative Remedy Process.  (*See* dkt. ##2, 21, 41-1 at 1-20.)  Indeed, prisoners like plaintiff can seek "an injunction requiring the warden to bring his prison into compliance" or "some other form of equitable relief."  *Abbasi*, 137 S. Ct. at 1865.  Moreover, the BOP's Administrative Remedy Program allows "an inmate

to seek formal review of an issue relating to any aspect of his/her own confinement," and "applies to all inmates in institutions operated by the" BOP.  Administrative Remedy Program Purpose and Scope, 28 C.F.R. § 542.10(a)-(b) (2018).

Similarly, defendants note that plaintiff could have filed a motion seeking to prevent the misuse of his legal mail during the pendency of his appeal from his Iowa conviction. *See Kadamovas v. Siereveld*, No. 2:18-cv-00490-jrs-mjd, 2019 WL 2869674, at *2 (S.D. Ind. July 3, 2019) (alternative remedies to redress legal mail claim include "motions in any pending litigation to prevent misuse of privileged documents").  Rather than file such a motion, however, plaintiff contacted the clerk of court for the Court of Appeals for the Eighth Circuit, who declined to intervene with FCI-Oxford because the correspondence sent by the court was "a matter of public record" also sent to the government's lawyer, so "[t]he government would gain no advantage from opening and reading" plaintiff's copies.[3] (Dkt. #41-1 at 20.)

Plaintiff argues that these avenues of relief are inadequate because none were resolved in his favor, and in fairness, injunctive relief may no longer be available to him for his claims now that he has been transferred to another institution.  However, plaintiff is not entitled to the remedy of his choice.  *See Robinson v. Sherrod*, 631 F.3d 839, 842 (7th Cir. 2011) (monetary damages "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest") (quoting *Wilkie*, 551 U.S. at 550).

---

[3] Indeed, as the Seventh Circuit has similarly observed, court mail "is a public document" so "[i]t is therefore not apparent to us why it should be regarded as privileged and how [plaintiff] could be hurt if the defendant read these documents before or after [plaintiff] does."  *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987).

11

At bottom, the alternative procedure inquiry does not ask whether the remedy available to the plaintiff offers "complete relief." *Lucas*, 462 U.S. at 388.

Accordingly, since the undisputed facts establish that plaintiff had at least one alternative process available to him, this factor weighs against extending *Bivens* to his claims as well. *See Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) ("Where Congress has established an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a secondary remedy") (citing *Abbasi*, 137 S. Ct. at 1857-58)); *Vega v. United States*, 724 F. App'x 536, 539 (9th Cir. 2018) (affirming district court's refusal to extend *Bivens* to prisoner plaintiff's access to courts and due process claims based on finding that plaintiff had adequate alternative processes available to him); *Silva*, 2019 WL 4721052, at *5 (alternative process factor weighed against *Bivens* remedy where injunctive relief, the Mandamus and Venue Act, and the BOP's administrative remedies program were available to plaintiff); *see also Gonzalez*, 269 F. Supp. 3d at 60, 63 (declining to expand *Bivens* cause of action for Eighth Amendment conditions-of-confinement and Fifth Amendment due process claims because administrative complaint process and other "special factors" counseled against expansion).

## C. Additional Special Factors Counsel Hesitation

Finally, the "special factors" analysis similarly weighs against implying *Bivens* remedies here. This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858. A "special factor counselling hesitation" should cause the court to "hesitate before answering that question

in the affirmative." *Id.* As the Court explained in *Abbasi*,

> if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts *must* refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal court jurisdiction under Article III.

*Id.* (emphasis added). Defendants identify five such special factors here.

### 1. Interference with Sensitive Government Functions

To begin, defendants argue that implying a *Bivens* remedy here would interfere with the "delicate process of prison administration." (Dkt. #26 at 14.) The Supreme Court has recognized that prison administration is immensely challenging, requiring "expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). For that reason, the *Turner* Court encouraged "a policy of judicial restraint" in prison administration. *Id.* at 85. Here, plaintiff argues that a *Bivens* remedy is necessary to correct what he views as FCI-Oxford's overly strict interpretation of BOP's adequate identification requirement for special mail. (Dkt. #41 at 11.) Setting aside the fact that plaintiff is no longer subject to this institutional rule, his challenge to how such regulations are interpreted and supplemented at the institutional level based on institution-specific concerns including preventing the flow of contraband into the prison in light of the sophistication of the inmates there runs squarely counter to *Turner*.

Plaintiff's reliance on a non-binding, pre-*Abbasi* decision in support of his position that defendants arbitrarily opened his legal mail in defiance of BOP regulations is

unavailing.  In *Merriweather v. Zamora*, 569 F.3d 307 (6th Cir. 2009), the Court of Appeals for the Sixth Circuit examined the alleged conduct of several mailroom employees at a federal prison in Milan, Michigan.   However, *Merriweather* does not instruct that a supplemental sender identification requirement like that which FCI-Oxford imposes would be violative of any inmate rights.  *See id.* at 313-14.  In *Merriweather*, Milan employees had learned at a required training session that writing "attorney/client" somewhere on the envelope would satisfy the BOP requirements for special mail handling, but opened several properly-labeled envelopes outside of the plaintiff's presence anyway.  *Id.* at 314.  At issue in *Merriweather* was the *conduct* of individual employees who had disregarded the prison's specific interpretation of BOP special mail rules.  Here, plaintiff takes issue with the use-of-title requirement itself and would proceed against defendants for *adhering* to the institution's policy.

Moreover, BOP regulations generally allow for correspondence to be handled as special mail if, among other requirements, the sender is "adequately identified" on the envelope.  28 C.F.R. § 540.18(a).  Legal mail from a lawyer must be "marked with the attorney's name and an indication that the person is an attorney."  28 C.F.R. § 540.19(b).  At FCI-Oxford, the sender must indicate his or her status as an attorney specifically through use of a "title, i.e., John Doe, Attorney."  (Dkt. #36-1 at 5.)  In opposition to Sharp's motion for injunctive relief, defendants assert that with one exception, the envelopes at issue here were non-compliant with this institutional rule.  (Dkt. #34 at 3, 5.)  Sharp responds that FCI-Oxford, in requiring the use of a title, has misinterpreted BOP regulations, construing them too strictly.  (Dkt. #41 at 11.)  However, "a *Bivens* action is

14

not the proper vehicle for altering an entity's policy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). Moreover, to the extent Sharp still seeks injunctive relief from this institutional rule, that request would likely be moot as he is no longer incarcerated at FCI-Oxford. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'").

## 2. Congress has Regulated the Prison Field Extensively without Creating Damages Remedies

Defendants also advance a separation of powers argument, noting that Congress has not created a private remedy for federal inmates to pursue monetary damages against federal officials and has in fact restricted or eliminated those remedies. Congress is "most often" in the best position to decide if a damages remedy serves the public interest. *Abbasi*, 137 S. Ct. at 1857. As defendants note, Congress has regulated the field of prison administration and prisoners' rights without creating new causes of action against federal prison officials. Indeed, the Civil Rights Act of 1871, 42 U.S.C. § 1983, created a private cause of action against state officials for constitutional violations. Notwithstanding the Supreme Court's narrowing of an analogous cause of action in *Bivens*, Congress has still not taken the opportunity to fill in that gap.

Rather, since *Bivens*, Congress has taken further steps to *limit* prisoner rights. For example, when it promulgated the Civil Rights of Institutionalized Persons Act of 1980

("CRIPA"), 42 U.S.C. § 1997a, Congress created a "weak exhaustion provision, which authorized district courts to stay actions" for a limited period of time while a prisoner exhausted his claims using the administrative remedies available. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).   More substantively, in 1995, Congress promulgated the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1997e, which:  (1) requires exhaustion of available administrative remedies before filing suit, 42 U.S.C. § 1997(e)(a); (2) bars prisoners from recovering from "mental or emotion injury" unless they show a "physical injury" or "sexual act," 42 U.S.C. § 1997(e)(e); and (3) prohibits prisoners from proceeding *in forma pauperis* if they have filed three or more prior actions that were dismissed without legal basis, 28 U.S.C. § 1915(g).  "Each of these limitations certainly suggest that Congress intended to reign in prisoners' ability to obtain relief in federal court, not expand it." *Silva*, 2019 WL 4721052, at *8; *see also Badley v. Granger*, No. 2:17-cv-41-jms-dlp, 2018 WL 30226553, at *4 (S.D. Ind. June 18, 2018) ("Congress has been active in the area of prisoners' rights, and its action -- not creating new rights -- do not support the creation of a new *Bivens* claim.").  Finally, defendants further note that in passing the Prison Rape Elimination Act of 2003 ("PREA"), Congress again sought to address the substantial problem of prison sexual assaults, but declined to create a private cause of action in doing so.

Plaintiff concedes that "it is telling that Congress has never created private damages remedies for First Amendment violations," but argues that this is because such violations "are so rare" and emphasizes that it is the domain of the judiciary to determine what the law is. (Dkt. #41 at 13.)  However, to the extent that the Supreme Court has never

recognized a private remedy for a First Amendment claim under *Bivens*, it is not because such claims concerning mail or legal mail are rare.  Regardless, the Supreme Court has explained that providing for a damages remedy is a decision best left for Congress.  *Abbasi*, 137 S. Ct. at 1857.  Plaintiff offers no counters to defendants' varied examples of Congress declining to create new causes of action against federal prison officials, and even restricting such causes of action.  Accordingly, the separation of powers factor also weighs heavily against implying a *Bivens* remedy for plaintiff's claims.

### 3.  System-Wide Costs and the Effect on Duty-Performance

Defendants also argue that system-wide costs could result from the extension of a *Bivens* remedy to plaintiff's First Amendment claims.  Before extending any new *Bivens* remedy, the Supreme Court specifically emphasized the importance of considering the "impact on governmental operations systemwide," including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Abbasi*, 137 S. Ct. at 1858.

Defendants point out that the BOP faces significant staffing shortages in addition to heavy workloads, since its staffing levels have been reduced in recent years.  Citing to the BOP's FY2019 Budget Report, defendants note that there were just 36,000 BOP employees responsible for monitoring a prisoner population of approximately 177,000

17

prisoners.[4]   Defendants reason that extending individual liability for mail interference claims could make recruiting qualified prison staff even more difficult, increase the tension inherent in officer-inmate relationships, and thus the chances of frivolous lawsuits.   This dovetails with defendants' last point: requiring the BOP and the Department of Justice to defend these actions, many of which could be frivolous, stands to divert substantial resources away from orderly prison administration.

Plaintiff responds that a ruling in his favor would only impact those facilities that have an institutional rule applied as strictly as FCI-Oxford's, which he speculates would be few in number and, therefore, not result in system-wide costs.   Even more theoretical, plaintiff posits that since some BOP employees "could become prisoners," ensuring that the rights of prisoners are protected is important to "making the BOP a desirable place to work."   (Dkt. #41 at 14.)   Given the speculative nature of the plaintiff's responsive arguments, this factor, at worst, favors defendants.

### 4.   Workable Remedy

Defendants next contend that a *Bivens* remedy would be unworkable in the legal mail context because "there is no bright line rule as to when prison officials actually violate an inmate's rights," so there would need to be further development in the law and courts would have to engage in a "subjective, fact-intensive assessment" to shape the cause of action.   (Dkt. #26 at 19.)   Thus, in defendants' view, recognizing a damages claim in this

---

[4] These numbers have not shifted significantly since 2019.   As of March 2022, the BOP's website indicated that there were 36,348 BOP employees responsible for the custody and care of 154,194 inmates.   BOP, "About Our Agency," https://www.bop.gov/about/agency/ (last visited March 18, 2022).

case would only invite an increase in litigation involving claims that will often afford "virtually no monetary recovery."  (Dkt. #26 at 20-21.)

Certainly, the Seventh Circuit has indicated that prison officials *potentially* violate an inmate's rights if they open properly marked legal mail outside of his presence.  *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005); *see also Guajardo-Palma v. Martinson*, 622 F.3d 801, 805 (7th Cir. 2010) (noting that the case law "has yet to converge on whether the unjustified opening of [legal] mail is a violation" or merely "a potential violation"); *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1138-41 (W.D. Wis. 2007) (prisoners do not have a freestanding right to be present when prison officials open mail, legal or otherwise).  While courts are generally familiar with resolving claims that are fact-bound, and where there are no bright-line rules, *Abbasi* recognizes that where the legal standard for a claim is "less [than] clear," that, too, is a factor weighing against extension. 137 S. Ct. at 1864-65.  Moreover, "[p]roof of damages (other than nominal damages) often will be impossible" in legal mail interference cases.  *Guajardo-Palma*, 622 F.3d at 806. Accordingly, this factor also weighs against an extension of *Bivens*.

### 5.  The Chilling Effect of *Bivens* Remedies on the Discharge of Prison Duties

The final factor defendants point to as weighing against extending *Bivens* remedies to plaintiff's claims was alluded to above:  the threat of personal liability standing in the way of prison officials executing their duties to their utmost degree.  Again, the *Abbasi* Court warned that creating a new *Bivens* cause of action may result in officers "refrain[ing] from taking urgent and lawful action in a time of crisis"; plus, "the costs and difficulties of later litigation might intrude upon and interfere with the proper exercise of their office."

137 S. Ct. at 1863.  While plaintiff argues that defendants have "overstated the dangers" given that this case involves mail handling (dkt. #41 at 17), he is attempting to sue prison officials for adhering to an institutional policy meant to prevent contraband from entering FCI-Oxford.  Accordingly, this factor also counsels against implying a *Bivens* remedy here.

On balance, therefore, the court will decline to imply a new *Bivens* remedy on the facts presented in this case, and will grant the FCI-Oxford defendants' motion to dismiss under Rule 12(b)(6).

## II. Dismissal for Lack of Personal Jurisdiction

As for the BOP defendants, Revell and Connors have moved separately for dismissal under Rule 12(b)(2) for lack of personal jurisdiction.  (Dkt. #25 at 1.)  The Seventh Circuit has repeatedly warned against bypassing jurisdictional questions to reach easier issues on the merits.  *E.g.*, *Kromrey v. U.S. Dept. of Justice*, 423 F. App'x 624, 626 (7th Cir. May 11, 2011) ("Before deciding any case on the merits, a federal court must ensure the presence of both subject-matter jurisdiction and personal jurisdiction"); *Davis v. Carter*, 61 F. App'x 277, 279 (7th Cir. March 13, 2003) (explaining that the district court "could not wrap up the merits" before addressing a defendant's Rule 12(b)(2) motion).[5]  Accordingly, the court will separately address the BOP defendants' 12(b)(2) defense, and dismiss them from this

---

[5] *See also* 5B Wright & Miller, Fed. Prac. and Proc. Civ. § 1351 n. 15 (3d ed.) ("As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint" and collecting cases from other courts); *but see N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 12 (1st Cir. 2009) (explaining that a court may forgo the jurisdictional inquiry "where an appeal presents a difficult jurisdictional issue, yet the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction") (citation omitted)).

lawsuit on that ground alone.

The jurisdictional question is not difficult in this case.  Where, as here, no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state.  *Smith v. Jefferson Cnty. Bd. of Educ.*, 378 Fed. App'x. 582, 585 (7th Cir. 2010); *see also Stafford v. Briggs*, 444 U.S. 527, 541-43 (1980) (the phrase "civil action" in 28 U.S.C. § 1391(e) does not include actions for money damages brought against federal officers in their individual capacities).  In Wisconsin, personal jurisdiction depends on two factors:  (1) whether defendants fall within the state's long-arm statute, Wis. Stat. § 801.05; and (2) whether the exercise of jurisdiction over each defendant comports with due process requirements of the Fourteenth Amendment.  *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003); *Kopke v. A. Hartrodt S.R.L.*, 245 Wis. 2d 396, 408-09, 629 N.W.2d 662, 667-68 (Wis. 2001).  Because of the breadth of Wisconsin's statute, the constitutional and statutory inquiries tend to merge into one question:  whether jurisdiction complies with federal due process requirements.  *See Felland v. Clifton*, 682 F.3d 665, 678-79 (7th Cir. 2012) ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process.").  The touchstone of this inquiry is whether defendants have sufficient "minimum contacts" with Wisconsin, such that this suit "does not offend traditional notions of fair play and substantial justice" and defendants "should reasonably anticipate being haled into court" here.  *Tamburo v. Dworkin*, 601 F.3d 693, 700-01 7th Cir. 2010) (internal quotations and citations omitted).

Faced with defendants' motion, plaintiff bears the burden of demonstrating the existence of jurisdiction. *See Purdue Rsch. Found.*, 338 F.3d at 782. To prevail, plaintiff need only make out a prima facie case of personal jurisdiction based on written materials, and any disputes of fact are to be resolved in his favor. *Tamburo*, 601 F.3d at 700. Even so, plaintiff has not met his relatively light burden of proof on this record.

At most, plaintiff alleges that defendants Revell and Connors each received an inmate grievance appeal from him while he was incarcerated in Wisconsin. Plaintiff does not dispute these defendants' assertions that they have never resided, worked, been professionally licensed in, or owned real property in Wisconsin, and perform their employment responsibilities and maintain their business offices elsewhere. Neither does plaintiff dispute that Revell played no personal role in her office's review of his administrative appeal,[6] nor that Connors' involvement was limited to briefly reviewing and signing the Central Office's response to his grievance. Rather, plaintiff maintains that because both Revell and Connors held supervisory positions within the administrative remedy process, and the facilities within the purview of their overall responsibilities included FCI-Oxford, they should have anticipated being haled into court in Wisconsin, where the "violations they defended" had allegedly occurred. (Dkt. #41 at 2-3.) In other words, to the extent defendants allegedly played *some* role in decision making with effects

---

[6] As for Revell, plaintiff suggests that the court substitute the deputy regional director that actually reviewed and signed his grievance. (Dkt. #41 at 2-3.) Even if the court were to do so, and could exercise personal jurisdiction over that individual, that would not save this lawsuit because, as explained above, plaintiff has failed to state a claim under *Bivens*, so any new defendant would certainly be entitled to dismissal under Rule 12(b)(6) if not under Rule 12(b)(2). *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) ("courts have broad discretion to deny leave to amend where . . . the amendment would be futile).

felt in Wisconsin, they may be sued generally for any alleged constitutional violations by their respective offices despite having no personal involvement.

In support of his position, plaintiff generally references two cases in which he maintains federal district courts in Illinois allowed a plaintiff there to proceed against Revell or Connors, but he does not detail the circumstances of those cases, or specify any reason why either case is at all relevant here, beyond the shared defendants, nor explain how this limited fact satisfies plaintiff's burden in light of the record in this case.[7]

Defendants, in contrast, are on far firmer footing.  As other courts from around the country have concluded, simply playing a broad supervisory role in overseeing the BOP's facilities or its regional and national administrative grievance program, or reviewing a grievance is not enough to establish personal jurisdiction over a non-resident, BOP administrator.  *E.g.*, *Dugan v. Jarvis*, 725 F. App'x 813, 816-17 (11th Cir. 2018) (receiving two administrative grievances from a Florida inmate is insufficient to establish personal jurisdiction over non-resident national inmate appeals administrator); *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state"); *Mays v. Hudgins*, No. 3:20-

---

[7] Specifically, plaintiff references *Iglesias v. True*, no. 19-cv-415-NJR (S.D. Ill. 2019), and *Borowski v. Baird*, no. 16-cv-848-JPG-GCS (S.D. Ill. 2016).  As for *Borowski*, public docket information available through Public Access to Court Electronic Records indicates that Revell and Connors were dismissed from that case in 2017.  *See Borowski*, no 16-cv-848-JPG-GCS, at dkt. #45.  Publicly available docket information about *Iglesias* indicates that Revell was never a defendant, and while Connors is, his motion to dismiss does not assert the same defenses as asserted in this case, *see Iglesias*, no. 19-cv-415-NJR, at dkt. #129, so that court did not consider whether Connors is subject to personal jurisdiction in Illinois.  In sum, these cases have no particular relevance to the facts before this court.

23

cv-181, 2021 WL 4469646, at *7-8 (N.D. W. Va. June 9, 2021) (finding lack of personal jurisdiction over non-resident defendant Connors in West Virginia "for monitoring the administrative remedy program"); *Hopper v. Barr*, No. 5:18-cv-01147-MGL-KDW, 2019 WL 3938076, at *8 (D. S.C. July 31, 2019) (supervisory role over prisons in forum state and overseeing the denial of an inmate's appeal are insufficient contacts to establish personal jurisdiction); *Sutter v. Goetz*, No. 16-cv-02552-DME-KLM, 2018 WL 582403, at *3 (D. Colo. Jan. 26, 2018) (finding that receiving information regarding potentially unconstitutional actions by local prison personnel insufficient to establish personal jurisdiction over defendant Revell); *Stone v. Derosa*, No. 07-0680-PHX-PGR (CRP), 2009 WL 798930, at *2 (D. Ariz. March 25, 2009) (rejecting an unsolicited grievance appeal from an inmate who happened to be in Arizona was insufficient to establish personal jurisdiction over non-resident BOP administrator in that state); *Georgacarakos v. Wiley*, No. 07-cv-01712, 2008 WL 4216265, at *5 (D. Colo. Sept. 12, 2008) (finding that personal jurisdiction did not arise simply because the director of the BOP received notice of allegedly unconstitutional conditions); *cf. Wag–Aero, Inc. v. United States*, 837 F. Supp. 1479, 1485 (E.D. Wis. 1993) ("the mere fact that federal government officials enforce federal laws . . . on a nationwide basis is not sufficient in and of itself to confer personal jurisdiction" in a *Bivens* action); *compare Shorter v. Barr*, No. 19cv108-WS/CAS, 2020 WL 1942785, at *10-11 (N.D. Fla. March 13, 2020) (declining to dismiss defendant Connors for lack of personal jurisdiction where he personally participated in three teleconferences which resulted in the plaintiff being denied surgery).

Accordingly, plaintiff's claims against defendants Revell and Connors will be dismissed without prejudice for lack of personal jurisdiction.

## ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. #25) is GRANTED, although as specifically set forth above, defendants Revell and Connors dismissal is without prejudice.

2) Plaintiff Robert Sharp's motion for a preliminary injunction (dkt. #21) and renewed motion for assistance in recruiting counsel (dkt. #31) are DENIED as moot.

3) The clerk of court is directed to enter final judgment in defendants' favor and close this case.

Entered this 21st day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge